# Illinois Official Reports

## Appellate Court

---

### *Hilco Trading, LLC v. Liberty Surplus Insurance Corp.*,
### 2014 IL App (1st) 123503

---

| | |
|---|---|
| Appellate Court Caption | HILCO TRADING, LLC; HILCO, INC.; HILCO APPRAISAL SERVICES, LLC; HILCO ENTERPRISE VALUATION SERVICES, LLC; MARK A. SMILEY; ARNOLD H. DRATT; and JEFFREY LINSTROM, Plaintiffs-Appellants, v. LIBERTY SURPLUS INSURANCE CORPORATION, ACE AMERICAN INSURANCE COMPANY, and CONTINENTAL CASUALTY COMPANY, Defendants-Appellees. |
| District & No. | First District, First Division<br>Docket No. 1-12-3503 |
| Filed | March 17, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action by several related corporations involved in appraisal and valuation services seeking to require their malpractice insurer to provide a defense in underlying actions alleging that plaintiffs breached their obligations relating to appraisals prepared in connection with asset-based loans plaintiffs made, the trial court erred in granting the insurer's motion for summary judgment and dismissing plaintiffs' motion for summary judgment, since the language used in the policies issued by defendant triggered defendant's duty to defend, even though the appraisals at issue were used by corporations within plaintiffs' family of related corporations to support the loans made by other corporations within plaintiffs' family. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 12-CH-1580; the Hon. Mary Anne Mason, Judge, presiding. |
| Judgment | Affirmed in part and reversed in part; cause remanded with directions. |

Counsel on
Appeal

Thompson, Coburn, LLP, of Chicago (J. David Duffy and Emily L. Peel, of counsel), and Kasowitz, Benson, Torres & Friedman, LLP, of New York, New York (Adam S. Ziffer, *pro hac vice*), for appellants.

Walker, Wilcox, Matousek, LLP, of Chicago (Joseph J. Borders, Neil E. Holmen, and James W. Kienzle, of counsel), for appellee Liberty Surplus Insurance Corporation.

Matthew T. Walsh and Cozen O'Connor, both of Chicago, and Angelo Savino and Cozen O'Connor, both of New York, New York, for other appellees.

Panel

JUSTICE CUNNINGHAM delivered the judgment of the court, with opinion.
Presiding Justice Connors and Justice Hoffman concurred in the judgment and opinion.

**OPINION**

¶ 1    This appeal arises from an October 9, 2012 order entered by the circuit court of Cook County which granted the motion to dismiss filed by defendant-appellee Continental Casualty Company (Continental) and which dismissed with prejudice the complaint against Continental; granted the motion for summary judgment filed by defendant-appellee Liberty Surplus Insurance Corporation (Liberty) and dismissed with prejudice the complaint against Liberty; dismissed with prejudice the complaint against defendants-appellees ACE American Insurance Company (ACE) and Illinois Union Insurance Company (Illinois Union)[1]; and denied the cross-motion for partial summary judgment filed by plaintiffs-appellants Hilco Trading, LLC (Hilco Trading); Hilco, Inc. (Hilco); Hilco Appraisal Services, LLC (Hilco Appraisal); Hilco Enterprise Valuation Services, LLC (Hilco Valuation); Mark A. Smiley; Arnold H. Dratt; and Jeffrey Linstrom (collectively, the plaintiffs). On appeal, Hilco Appraisal

---

[1]In the circuit court of Cook County, the plaintiffs filed a complaint against ACE seeking coverage under two insurance policies the plaintiffs believed were issued by ACE. However, in its October 9, 2012 order, the trial court noted that the plaintiffs were incorrect in that Illinois Union actually issued one of the policies (the Illinois Union policy), and that the plaintiffs actually intended to sue Illinois Union in order to seek coverage under that policy. Thus, the trial court dismissed the plaintiffs' complaint against Illinois Union and ACE. The Illinois Union policy is at issue in this appeal and the policy issued by ACE is not at issue.

and Hilco Valuation (collectively, Hilco Appraisal and Valuation)[2] argue that the trial court erred in granting Liberty's motion for summary judgment, dismissing the complaint against Liberty and Illinois Union, and denying their cross-motion for partial summary judgment. For the following reasons, we affirm the judgment of the circuit court of Cook County as to Continental and ACE, and we reverse the judgment of the circuit court as to Liberty, Illinois Union, and the plaintiffs. We remand the matter for further proceedings.

¶ 2                                    BACKGROUND

¶ 3    Hilco is a corporation organized under the laws of Illinois and has its principal place of business in Northbrook, Illinois. Hilco Trading is a limited liability company organized under the laws of Delaware and has its principal place of business in Northbrook, Illinois. Hilco Appraisal is a limited liability company organized under the laws of Delaware and has its principal place of business in Northbrook, Illinois. Hilco Appraisal is a majority-owned subsidiary of Hilco Trading. Hilco Valuation is a limited liability company organized under the laws of Delaware and has its principal place of business in Northbrook, Illinois. Hilco Valuation is an indirect, majority-owned subsidiary of Hilco Trading. The record suggests that Hilco Appraisal and Valuation are in the business of providing expert professional services consisting of the valuation of various types of assets. The record suggests that Hilco Financial, LLC (Hilco Financial), was a limited liability company organized under the laws of Delaware and was owned and controlled by Hilco Trading. Hilco Financial was in the business of making loans to other companies through asset-based lending.

¶ 4    Hilco Trading purchased a primary professional liability insurance policy from Liberty (the Liberty policy), which covered claims against Hilco Trading, Hilco Appraisal, Hilco Valuation and other Hilco entities for errors in rendering professional services. The Liberty policy covered the period from April 23, 2008 to April 23, 2009 and provided a limit of $10 million in excess of a $250,000 deductible. The Liberty policy stated that Liberty had the duty to defend any "claim" made against the "Insured." The Liberty policy provided definitions for the following terms, which are at issue in this case:

> "(A) 'Claim' means receipt of a civil action *** naming the **Insured** seeking **Damages** *** arising out of a **Wrongful Act** by the **Insured** or any **Entity** for whom the **Insured** is **legally** liable.
>
>                                    * * *
>
> (H) 'Insured' means only the following:
>     (1) The Named Insured [Hilco Trading] ***.
>                                    * * *
>     (5) Any **Subsidiary**
>                                    * * *
>
> (O) 'Professional Services' means those services specified in Item 7 of the Declarations which are provided by the **Insured** to a third party for a monetary fee ***.
>                                    * * *

[2]Although the plaintiffs filed a notice of appeal collectively, the appellant brief was filed solely on behalf of Hilco Appraisal and Valuation. The remaining plaintiffs are not participating in this appeal.

**(Q)** '**Subsidiary**' means any **Entity** in which [Hilco Trading] owns either directly or indirectly 50% or more of the outstanding voting stock. ***

* * *

**(R)** '**Wrongful Act**' means any actual or alleged act, error, omission, misstatement, misleading statement, neglect, or breach of duty in the rendering of or failure to render **Professional Services**."

Most notably, the services specified within item 7 of the declarations in the Liberty policy included "[v]alue opinions in support of asset-based lending."

¶ 5 Additionally, Hilco Trading purchased an excess professional liability insurance policy from Illinois Union (the Illinois Union policy), which covered the period from April 23, 2008 to April 23, 2009, extended to May 23, 2009.[3] The Illinois Union policy provided a $10 million limit in excess of the liability limit and deductible of the Liberty policy. The Illinois Union policy stated that "[Illinois Union] agrees to provide insurance coverage to the Insureds in accordance with the terms, definitions, conditions, exclusions and limitations of the [Liberty policy], except as otherwise provided herein."

¶ 6 According to Hilco Appraisal and Valuation, on March 31, 2010, a company named The Patriot Group, LLC (Patriot), filed a complaint in the circuit court of Cook County against Hilco Trading, Hilco, Hilco Financial, Hilco Appraisal, and Hilco Valuation under case number 10 L 03914 (the Patriot action). Patriot's complaint was superseded by an amended complaint filed on September 30, 2010, and a second amended complaint filed on June 20, 2011. The second amended complaint consisted of, among other allegations, counts against Hilco Financial for breach of contract and fraud; counts against Hilco Trading for fraud and aiding and abetting fraud; and a count against Hilco Appraisal and Valuation for negligent misrepresentation. The following facts were alleged in Patriot's second amended complaint. Hilco Financial's business involved making asset-based loans to third-party borrowers that were collateralized by accounts receivable, inventory, machinery and equipment, real estate, or other substantial assets. In order to finance the loans to its borrowers, Hilco Financial itself borrowed money from financial institutions such as Patriot. Hilco Financial then took the money it borrowed from financial institutions, and used that money to lend to its own borrowers.

¶ 7 Patriot alleged that in November 2005, Hilco obtained a $20 million junior secured loan from Patriot. The proceeds from the loan were to be used by Hilco Financial to enter into asset-based loans to third-party borrowers that met the criteria established in the agreement between Patriot and Hilco Financial. As part of the agreement, Hilco Financial was required to provide Patriot with written appraisal reports and audit reports showing that the loans Hilco Financial was making to third-party borrowers were fully secured. Hilco Appraisal and Hilco Valuation were the entities that appraised the assets securing the potential loans Hilco Financial would provide to its third-party borrowers. This included appraising assets such as accounts receivable, equipment, inventory, and intellectual property.

¶ 8 Patriot further alleged that Hilco Financial breached its contract with Patriot in many ways, including failing to make loans that conformed to the criteria of their agreement, failing to make payments of principal, and failing to make payments of interest. Patriot alleged that

_____

[3]Hilco Trading also purchased an excess professional liability policy from Continental for 2009-10 (the Continental policy). The Continental policy is not an issue in this appeal.

Hilco Appraisal and Valuation performed appraisals that were grossly inflated. Patriot claimed that Hilco Appraisal and Valuation conducted the appraisals and delivered them to Hilco Financial with the knowledge and understanding that they would be forwarded to Patriot. Patriot alleged that Hilco Financial forwarded the appraisals to Patriot with the written consent of Hilco Appraisal and Valuation. Patriot claimed that it was induced to rely on the accuracy of the appraisals in entering into the agreement with Hilco Financial and advanced millions of dollars to Hilco Financial as a result of its reliance.

¶ 9     According to Hilco Appraisal and Valuation, on May 20, 2010, a bank named Bayerische Hypo-und Vereinsbank AG, New York Branch (HVB) filed a complaint in the circuit court of Cook County against Hilco Trading, Hilco, Hilco Financial, Hilco Appraisal, Hilco Valuation, and other defendants under case number 10 CH 21663 (the HVB action). HVB's complaint was superseded by a first amended complaint.[4] HVB's first amended complaint consisted of, among other allegations, a count against Hilco Financial for breach of contract; and a count against Hilco Appraisal and Valuation for negligent misrepresentation. The following facts were alleged in HVB's first amended complaint. On or around September 27, 2007, Hilco Financial entered into a loan agreement with HVB in which HVB agreed to extend credit to Hilco Financial in an amount not to exceed $75 million. The HVB agreement was executed for similar purposes as the Patriot agreement. To secure the loan, Hilco Financial granted HVB a first-priority security interest in substantially all of Hilco Financial's assets. As a part of the agreement, all loans made by Hilco Financial to its borrowers were required to be supported by appraisals and audit work that showed that the loans were fully secured. Hilco Appraisal and Valuation were the entities that appraised the assets securing the potential loans Hilco Financial would provide to its borrowers.

¶ 10    HVB alleged that Hilco Financial defaulted on the loan in question, and after Hilco Financial's assets were liquidated, HVB was left with a loss of at least $10,004,149.94. HVB alleged that the appraisals performed by Hilco Appraisal and Valuation were grossly inflated. HVB claimed that Hilco Appraisal and Valuation prepared the appraisals for Hilco Financial with the understanding and intent that the appraisals would be provided to HVB and that HVB would rely on the appraisals. HVB claimed that it was induced by Hilco Trading to rely upon the accuracy of the appraisals in entering into the loan agreement and advancing millions of dollars as a result of its reliance.

¶ 11    Additionally, the record contains a letter from HVB to Hilco Appraisal and Valuation, which was sent on April 22, 2009 (the demand letter). The demand letter contained similar allegations against Hilco Appraisal and Valuation as to the purpose and effect of the appraisals. The demand letter stated that HVB would not have made loans to Hilco Financial if the appraisals had accurately reflected the value of Hilco Financial's loan collateral. According to Hilco Appraisal and Valuation, they sent a copy of the demand letter to Liberty sometime between April 22, 2009 and May 5, 2009.

¶ 12    In the HVB action, Hilco Appraisal and Valuation moved to dismiss HVB's first amended complaint as to negligent misrepresentation. The trial court denied Hilco Appraisal and Valuation's motion to dismiss and found that HVB's complaint sufficiently alleged a cause of

---

[4]Despite careful review of the record, we are unable to determine the date on which HVB's first amended complaint was filed.

action for negligent misrepresentation. The record does not disclose the status of the Patriot action (which was filed on March 31, 2010 and presumably was then pending).

¶ 13    On January 17, 2012, the plaintiffs filed a complaint in the circuit court of Cook County for declaratory relief and damages against the defendants. In their complaint, the plaintiffs sought a declaratory judgment that Liberty was obligated to defend the plaintiffs in the Patriot action and HVB action (collectively, the underlying actions). The plaintiffs alleged that the defendants have not accepted the coverage obligations under their insurance policies, and have ignored their duty to defend the plaintiffs. The plaintiffs also sought a declaratory judgment that the defendants were obligated to pay the claim expenses of the underlying actions and indemnify the plaintiffs for any judgments and/or settlements attributable to the underlying actions.

¶ 14    On March 28, 2012, Liberty filed a motion for summary judgment against the plaintiffs on the issue of Liberty's duty to defend the plaintiffs in the underlying actions. Liberty argued that it did not have a duty to defend the plaintiffs because the terms of the Liberty policy state that it covers professional services which are provided by an insured to a third party for a fee, and Hilco Appraisal and Valuation provided professional services only to Hilco Financial, which is not a third party. On or around March 30, 2012, Continental filed a motion to dismiss pursuant to section 2-619 of the Illinois Code of Civil Procedure (735 ILCS 5/2-619 (West 2010)). On May 10, 2012, the plaintiffs filed a cross-motion for partial summary judgment against Liberty on the duty to defend issue. The plaintiffs pointed out that in the underlying actions, Patriot and HVB alleged that they were provided with the appraisals performed by Hilco Appraisal and Valuation. Thus, the plaintiffs argued that their professional services were provided to a third party. The plaintiffs also argued that Hilco Financial should be considered a third party under the terms of the Liberty policy because it is a separate entity from Hilco Appraisal and Valuation. As such, the plaintiffs argued that Liberty had a duty to defend the plaintiffs in the underlying actions.

¶ 15    On September 13, 2012, the trial court held a hearing on the summary judgment motions and Continental's motion to dismiss. The trial court agreed with Liberty and found that Liberty did not have a duty to defend Hilco Appraisal and Valuation in the underlying actions. The trial court stated that in order to trigger Liberty's duty to defend, Hilco Appraisal and Valuation's services must have been provided to a third party for a monetary fee. The trial court reasoned that Patriot and HVB were not transformed into third parties that commissioned the services of Hilco Appraisal and Valuation simply because of the negligent misrepresentation alleged against Hilco Appraisal and Valuation. Rather, the trial court found that Hilco Appraisal and Valuation prepared the appraisals only for Hilco Financial and not for Patriot and HVB. Also, the trial court found that Hilco Financial cannot be considered a third party under the terms of the Liberty policy. Thus, the trial court concluded that as a matter of law, Hilco Appraisal and Valuation's preparation of the appraisals did not constitute professional services within the meaning of the Liberty policy.

¶ 16    On October 9, 2012, the trial court entered an order that granted Continental's motion to dismiss and dismissed with prejudice the complaint against Continental; granted Liberty's motion for summary judgment and dismissed with prejudice the complaint against Liberty; dismissed with prejudice the complaint against ACE and Illinois Union; and denied the plaintiffs' cross-motion for partial summary judgment. On November 6, 2012, the plaintiffs filed a timely notice of appeal. Therefore this court has jurisdiction to consider Hilco Appraisal

and Valuation's arguments on appeal pursuant to Illinois Supreme Court Rule 303 (eff. May 30, 2008).

¶ 17                                          ANALYSIS

¶ 18      On appeal, we determine whether the trial court erred in granting Liberty's motion for summary judgment, dismissing the plaintiffs' complaint against Liberty and Illinois Union, and denying the plaintiffs' cross-motion for partial summary judgment.

¶ 19      Hilco Appraisal and Valuation argue that the trial court erred by not requiring Liberty to defend them in the underlying actions. Hilco Appraisal and Valuation point out that in Illinois, if the complaint in the underlying action alleges facts within, or even potentially within, policy coverage, then the insurer is obligated to defend the insured even if the allegations are groundless, false, or fraudulent. As such, Hilco Appraisal and Valuation argue that the "duty to defend" standard establishes a low threshold to trigger coverage under the Liberty policy. The Liberty policy covers claims against the insured for errors in rendering professional services. The Liberty policy defines "professional services" as services under the policy which are provided by the insured to a third party for a monetary fee. Hilco Appraisal and Valuation contend that Liberty's duty to defend is triggered by the allegations in the underlying actions which allege that Hilco Appraisal and Valuation rendered negligent services that harmed Patriot and HVB. Hilco Appraisal and Valuation assert that there is no question that the appraisals they prepared in the underlying actions constitute professional services under the Liberty policy.

¶ 20      Moreover, Hilco Appraisal and Valuation point out that the trial court's ruling was based largely on its finding that Hilco Appraisal and Valuation provided their services only to Hilco Financial and not to Patriot and HVB, and that Hilco Financial is not a third party. However, Hilco Appraisal and Valuation argue that their professional services *were* provided to Patriot and HVB. Specifically, Hilco Appraisal and Valuation contend that the underlying actions alleged that Patriot and HVB were the intended beneficiaries of the appraisal services completed by Hilco Appraisal and Valuation and that Patriot and HVB were actually provided with those services. The underlying actions also alleged that Patriot and HVB relied on the appraisals in making loans to Hilco Financial and that Hilco Appraisal and Valuation knew and intended that Patriot and HVB would rely on the appraisals. Hilco Appraisal and Valuation assert that it is immaterial that the services were also provided to Hilco Financial, as long as the services were provided to Patriot and HVB. Hilco Appraisal and Valuation acknowledge that the appraisals they prepared were addressed to Hilco Financial, and the restrictions in the appraisals stated that the appraisals were only for use by Hilco Financial and could not be distributed to any third party without the written consent of Hilco Appraisal and Valuation. However, Hilco Appraisal and Valuation argue that the restrictions in the appraisals were boilerplate provisions and were not absolute. Also, Hilco Appraisal and Valuation point out that in the underlying actions, Patriot alleged that Hilco Appraisal and Valuation provided written consent for Patriot to use the appraisals. Thus, Hilco Appraisal and Valuation argue that the trial court erred in finding that their professional services were not provided to Patriot and HVB.

¶ 21      Alternatively, Hilco Appraisal and Valuation argue that even if this court finds that they provided their services only to Hilco Financial and not to Patriot and HVB, Hilco Financial itself should be considered a third party under the Liberty policy. Hilco Appraisal and

Valuation contend that if Hilco Financial is considered a third party, then Liberty has a duty to defend Hilco Appraisal and Valuation in the underlying actions. Hilco Appraisal and Valuation assert that Hilco Financial is a third party because the plain meaning of the term "third party" means any party other than the party providing the professional services. Also, Hilco Appraisal and Valuation argue that Liberty could have used the definition of "professional services" to unequivocally state that the Liberty policy would not cover services provided by one "Insured" to another "Insured," but Liberty chose not to do so. Specifically, Hilco Appraisal and Valuation assert that the Liberty policy could have stated that "professional services" are services provided by the "Insured" to a "non-Insured." Rather, the Liberty policy states that professional services are services provided by the "Insured" to a "third party."

¶ 22    Further, Hilco Appraisal and Valuation point out that the Liberty policy contains an exclusion that states that the policy does not cover claims if one Insured *sues* another Insured (the Insured v. Insured exclusion). Hilco Appraisal and Valuation argue that the trial court's and Liberty's construction of the term "third party" would render the Insured v. Insured exclusion meaningless. Hilco Appraisal and Valuation claim that if the trial court's and Liberty's construction of "third party" is correct, and an "Insured" cannot also be considered a "third party" under the Liberty policy, then the policy would not cover professional services provided by one Insured to another insured. If the policy does not cover professional services provided by one Insured to another Insured, then there would be no need to write an exclusion relating to lawsuits between insureds. Thus, Hilco Appraisal and Valuation assert that the Insured v. Insured exclusion would be meaningless. Hilco Appraisal and Valuation argue that Illinois law requires that if this court finds that both Hilco Appraisal and Valuation, and Liberty, present reasonable constructions of the term "third party," the term would be deemed ambiguous and would have to be construed in favor of Hilco Appraisal and Valuation. Therefore, Hilco Appraisal and Valuation argue that Hilco Financial should be considered a third party under the Liberty policy. Accordingly, Hilco Appraisal and Valuation argue that the trial court erred in finding that their services were not provided to a third party, and erred in not requiring Liberty to defend Hilco Appraisal and Valuation in the underlying actions.

¶ 23    In response, Liberty argues that the trial court did not err in finding that Liberty is not required to defend Hilco Appraisal and Valuation in the underlying actions.[5] Specifically, Liberty contends that the trial court correctly found that Hilco Appraisal and Valuation provided their services only to Hilco Financial, and not to Patriot and HVB. Liberty argues that this court should consider the affirmative defenses that Hilco Appraisal and Valuation presented in the underlying actions, in which Hilco Appraisal and Valuation argued that the appraisals were intended for use only by Hilco Financial and not Patriot or HVB. Also, Liberty asserts that the allegations in the underlying actions and the terms of the Liberty policy support the trial court's ruling. Liberty points out that in the underlying actions, Patriot and HVB alleged that Hilco Appraisal and Valuation provided the appraisals *to Hilco Financial*, and that Hilco Financial provided the appraisals to Patriot and HVB. Liberty emphasizes that Hilco Financial was not providing professional services to Patriot and HVB. Rather, Hilco Financial

---

[5]In its brief on appeal, Illinois Union adopts and incorporates the arguments of Liberty. Therefore, in the interest of clarity, we will only address Liberty's arguments. Illinois Union's additional arguments are minimal and do not affect our analysis or the outcome of this appeal.

was inducing Patriot and HVB to provide loans to Hilco Financial. Liberty argues that it would be absurd to accept the notion that a borrower (Hilco Financial) provides professional services to its potential lenders (Patriot and HVB) when it distributes an assessment of the value of the borrower's own collateral. Liberty points out that each of the appraisals states that the appraisals are only for use by Hilco Financial and cannot be used by a third party without written consent from Hilco Appraisal and Valuation. As such, Liberty contends that the language of the appraisals makes it clear that Hilco Financial was the intended beneficiary of the appraisals. Liberty asserts that the trial court correctly came to this conclusion when it stated that the allegations in the underlying actions claimed that Hilco Appraisal and Valuation intended for Patriot and HVB to see the appraisals. The trial court further stated that Hilco Appraisal and Valuation's intention did not transform Patriot and HVB into third parties who commissioned the services for a fee. Thus, Liberty argues that the trial court correctly found that Hilco Appraisal and Valuation provided their services only to Hilco Financial, and not to Patriot and HVB.

¶ 24 Additionally, Liberty argues that the trial court correctly found that Hilco Financial cannot be considered a third party under the terms of the Liberty policy. Liberty points out that Hilco Appraisal and Valuation argued that Hilco Financial should be considered a third party under the Liberty policy because the plain meaning of "third party" is any party other than the party providing the professional services. Liberty argues that Hilco Appraisal and Valuation's interpretation of "third party" is incorrect because it effectively negates the term "third party" in the Liberty policy. Liberty contends that the trial court was correct in relying on the ruling of the United States District Court for the District of Colorado in *Apartment Investment & Management Co. (AIMCO) v. Nutmeg Insurance Co.*, No. 06cv00508PSFMJW, 2007 WL 5060416 (D. Colo. Apr. 9, 2007), in which the district court held that an insurance policyholder could not be considered both an "Insured" and an "other" under the policy. Also, Liberty argues that the trial court's interpretation of "third party" does not negate the Insured v. Insured exclusion. Rather, it complements the exclusion. Liberty points out that the definition of "professional services" under the Liberty policy states that coverage does not extend to *services* provided by one "Insured" to another "Insured." The Insured v. Insured exclusion states that the Liberty policy does not cover *claims* brought by one "Insured" against another "Insured." Liberty contends that the common thread between the two provisions is that Liberty intended to avoid coverage for matters involving entanglements between multiple Hilco entities. Thus, Liberty argues that the trial court correctly found that Hilco Financial cannot be considered a third party under the Liberty policy and correctly granted its motion for summary judgment and dismissed the plaintiffs' complaint with prejudice.

¶ 25 "It is the general rule that the duty of the insurer is determined by the allegations of the underlying complaint." *Lyons v. State Farm Fire & Casualty Co.*, 349 Ill. App. 3d 404, 406 (2004) (citing *Maryland Casualty Co. v. Peppers*, 64 Ill. 2d 187, 193 (1976)). In insurance law, the duty to defend is broader than the duty to indemnify. *West Bend Mutual Insurance Co. v. Sundance Homes, Inc.*, 238 Ill. App. 3d 335, 337 (1992). "[T]he threshold for pleading duty to defend is minimal." *Id*. at 337-38. When there is a doubt as to the duty to defend, it is to be resolved in favor of the insured, and the insurer can only justifiably refuse to defend when the allegations against the insured clearly show on their face that the claim is beyond the coverage of the policy. *Id*. at 338. If the underlying complaint against the insured alleges facts that are within or even potentially within the coverage of the policy, the insurer is obligated to defend

the insured even if the allegations are groundless, false, or fraudulent. *Farmers Automobile Insurance Ass'n v. Danner*, 2012 IL App (4th) 110461, ¶ 32. In other words, because the threshold requirements that the complaint must satisfy to present a claim of potential coverage are minimal, "the complaint need present only a possibility of recovery, not a probability of recovery." *Bituminous Casualty Corp. v. Gust K. Newberg Construction Co.*, 218 Ill. App. 3d 956, 960 (1991).

¶ 26    Summary judgment is appropriate when the pleadings, depositions, and affidavits, construed in the light most favorable to the nonmoving party, present no genuine issue of material fact and show that judgment should be granted as a matter of law. *Reynolds v. Decatur Memorial Hospital*, 277 Ill. App. 3d 80, 84 (1996). This court reviews the trial court's ruling on a motion for summary judgment under the *de novo* standard of review. *Quality Lighting, Inc. v. Benjamin*, 227 Ill. App. 3d 880, 884 (1992). Therefore, we review the trial court's ruling *de novo* in this case.

¶ 27    Despite the parties' numerous arguments, the issue in this case is fairly narrow. Plainly stated, it is whether Hilco Appraisal and Valuation's professional services were provided to a third party within the meaning of the Liberty policy so as to trigger a duty to defend by Liberty. There is no dispute that the appraisal services performed by Hilco Appraisal and Valuation fell within the definition of "professional services" under the terms of the Liberty policy. Also, Liberty acknowledged that it did not move for summary judgment on the issue of the services being provided for a monetary fee. Thus, the only aspect at issue in this case is whether Hilco Appraisal and Valuation's services were provided to a third party. The trial court's judgment in this case hinged on its conclusion that Hilco Appraisal and Valuation's services were not provided to a third party. In reaching this conclusion, the trial court found that Hilco Appraisal and Valuation provided their services only to Hilco Financial and not to Patriot and HVB, and that Hilco Financial cannot be considered a "third party" under the terms of the Liberty policy. We discuss the trial court's findings in making our determination.

¶ 28    The trial court first found that Hilco Appraisal and Valuation provided their services only to Hilco Financial and not to Patriot and HVB. We disagree with this finding. We note that the duty to defend standard establishes a low threshold to trigger coverage under insurance policies. If the allegations in the underlying actions fall within or *even potentially within* coverage, then the duty to defend is triggered. Further, we must construe the Liberty policy liberally and in favor of the plaintiffs. See *United Services Automobile Ass'n v. Dare*, 357 Ill. App. 3d 955, 963 (2005). Accordingly, we can look to the allegations in the underlying complaint to determine whether the duty to defend was triggered.

¶ 29    In the underlying actions, Patriot and HVB alleged that Hilco Appraisal and Valuation performed appraisal services for Hilco Financial with the knowledge and intent that Patriot and HVB would rely on the appraisals. Specifically, in the Patriot action, Patriot alleged as follows:

"167. The appraisals were reviewed and approved by senior management at Hilco Appraisal and Hilco Valuation before they were delivered to Hilco Financial with the knowledge and understanding that they would subsequently be forwarded to Patriot.

168. Hilco Appraisal and HIlco Valuation knew that these appraisals were performed to allow Hilco Financial to satisfy its obligations under [the agreement] to provide its lenders (such as Patriot) with detailed summaries of appraisals *before they would agree* to advance money for new loans." (Emphasis added.)

¶ 30    Similarly, in the HVB action, HVB alleged as follows:

"105. Moreover, in order to further induce HVB into believing in and relying upon the asserted valuation expertise of [Hilco] Appraisal and Valuation, HVB attended, at [Hilco] Appraisal and Valuation's invitation, an auction of collateral that had been valued by [Hilco] Appraisal and/or [Hilco] Valuation.

106. By reason of the foregoing, [Hilco] Appraisal and Valuation knew and intended that their appraisals of the collateral securing [Hilco] Financial's loans to its borrowers would be provided to and relied upon by HVB *in connection with its decision to enter into [the loan agreement] and make loans thereunder*." (Emphasis added.)

¶ 31    Hilco Appraisal and Valuation's knowledge at the time the appraisals were performed is very significant. Clearly, in the underlying actions, Patriot and HVB alleged that Hilco Appraisal and Valuation knew how the appraisals were going to be used *before the appraisals were delivered to Hilco Financial*. This is not a situation in which Hilco Appraisal and Valuation simply completed the appraisals for Hilco Financial without the knowledge that Hilco Financial would distribute the appraisals to an unknown third party. Rather, Patriot and HVB alleged that Hilco Appraisal and Valuation completed the appraisals with the full knowledge and intent that the appraisals would be distributed to Patriot and HVB.

¶ 32    Additionally, during oral argument before this court, in response to a direct question, all parties agreed that Hilco Appraisal and Valuation knew that the appraisals would be used to induce Patriot and HVB to provide loans before the appraisals were delivered to Hilco Financial. We agree with Hilco Appraisal and Valuation's argument that it is immaterial that the appraisal services were performed for Hilco Financial, as long as the complaints alleged that Patriot and HVB also received the appraisals in addition to Hilco Financial. Because it was alleged that Hilco Appraisal and Valuation were fully aware of the purpose and intended use of the appraisals *before* the appraisals were delivered to Hilco Financial, Liberty cannot argue that Hilco Appraisal and Valuation provided the appraisals only to Hilco Financial. Further, even though the appraisals stated that they were for Hilco Financial's use only and could only be distributed with Hilco Appraisal and Valuation's consent, Patriot alleged that Hilco Appraisal and Valuation *did provide their written consent* for Patriot to use the appraisals. Construing the Liberty policy liberally and in the light most favorable to Hilco Appraisal and Valuation, we find that it is certainly arguable that Hilco Appraisal and Valuation provided the appraisal services and the accompanying reports to Patriot and HVB. Thus, Liberty's duty under the Liberty policy to defend Hilco Appraisal and Valuation in the underlying actions, was triggered. Accordingly, we hold that the trial court erred in granting Liberty's motion for summary judgment, dismissing the plaintiffs' complaint against Liberty and Illinois Union, and denying their cross-motion for partial summary judgment.[6] Therefore, those trial court rulings are reversed.

¶ 33    Although we reverse the trial court's judgment which granted Liberty's motion for summary judgment, dismissed the plaintiffs' complaint against Liberty and Illinois Union, and denied the plaintiffs' cross-motion for partial summary judgment, we must discuss the remainder of the trial court's judgment. In its judgment, the trial court also dismissed with

---

[6]We note that Hilco Appraisal and Valuation also argued that the trial court erred in finding that Hilco Financial cannot be considered a third party under the terms of the Liberty policy. However, due to our findings above, we need not address this argument.

prejudice the complaints against Continental and ACE because the underlying actions did not arise under the insurance policies issued by Continental and ACE. Accordingly, the trial court's judgment that dismissed with prejudice the complaints against Continental and ACE was not erroneous.

¶ 34    We must also clarify the effect of reversing the trial court's denial of the plaintiffs' cross-motion for partial summary judgment. We note that in the plaintiffs' motion, they argue that Liberty has a duty to defend them in the underlying actions because Patriot and HVB were provided with the appraisals performed by Hilco Appraisal and Valuation, and because of the "third party" argument. The plaintiffs also present other arguments not at issue in this appeal. As previously discussed, the trial court erred in finding that Liberty did not have a duty to defend the plaintiffs *only because* Hilco Appraisal and Valuation arguably provided the appraisals to Patriot and HVB. All of the parties to the appraisal allegedly knew of this and there was allegedly written consent to do so as required by the terms of the appraisal reports. Thus, the trial court must enter an order granting the plaintiffs' cross-motion for partial summary judgment *on this issue only*.

¶ 35    For the foregoing reasons, we affirm the judgment of the circuit court of Cook County which dismissed with prejudice the complaints against Continental and ACE. We reverse the circuit court's judgment which granted Liberty's motion for summary judgment, dismissed the plaintiffs' complaint against Liberty and Illinois Union, and denied the plaintiffs' cross-motion for partial summary judgment. The circuit court is directed to enter an order granting the plaintiffs' cross-motion for partial summary judgment solely on the duty to defend issue for the reasons discussed in this opinion. The matter is remanded for further proceedings consistent with this opinion.

¶ 36    Affirmed in part and reversed in part; cause remanded with directions.